1
2
3                                                                    O
4
5
6
7
8
9                   **UNITED STATES DISTRICT COURT**
10                  **CENTRAL DISTRICT OF CALIFORNIA**
11                         **EASTERN DIVISION**
12

13  DAVID EUGENE GIVENS,            )        No. EDCV 08-111-CAS (SH)
                                    )
14              Petitioner,         )        FINAL REPORT AND
                                    )        RECOMMENDATION OF
15                                  )        UNITED STATES MAGISTRATE JUDGE
                                    )
16       v.                         )
                                    )
17  M. MARTEL  (Warden),            )
                                    )
18              Respondent.         )
    _____)
19
20          This Final Report and Recommendation is submitted to the Honorable Christina A.

21  Snyder, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194

22  of the United States District Court for the Central District of California.  For reasons

23  stated below, the Petition for Habeas Corpus relief should be denied and this action

24  dismissed with prejudice.

25
26                          **I.  PROCEDURAL HISTORY**

27          <u>Pro se</u> Petitioner, a prisoner in the custody of the California Department of

28  Corrections, challenges a conviction in California Superior Court, San Bernardino County

                                         1

1    (Case No. FVI020319), alleging that his conviction is unconstitutional because he was

2    denied his Sixth Amendment right to counsel.  In addition, he contends that his public

3    defender, who was relieved prior to trial, provided ineffective assistance, as did appointed

4    appellate counsel.

5           On March 10, 2005, following a bench trial, Petitioner was found guilty of vehicle

6    theft (Cal. Penal Code § 10851(a)).  The trial court also found true allegations that

7    Petitioner had suffered three prior convictions pursuant to California's Three Strikes Law

8    (Cal. Penal Code §§ 667(b)-(I), 1170.12(a)-(d)), and had served three prior prison terms.

9    [Respondent's Lodgment ("RL") 1 at 99, 112-14.] The trial court sentenced Petitioner to

10   state prison for a term of twenty-eight years to life. [RL 1 at 101, 106.]          Petitioner

11   appealed, and the California Court of Appeal affirmed his conviction in an unpublished

12   opinion issued January 31, 2006 (Case No. E037930).  Petitioner did not file a Petition for

13   Review with the California Supreme Court.

14          On February 24, 2007, Petitioner filed a petition for writ of habeas corpus in the

15   San Bernardino County Superior Court (Case No. SWHSS-9264).  The court denied that

16   petition on March 5, 2007, citing People v. Duvall, 9 Cal.4th 464, 37 Cal. Rptr. 2d 259

17   (1995). [RL 7.]

18          On May 1, 2007, Petitioner filed a petition for writ of habeas corpus in the

19   California Court of Appeal  (Case No. E043020). [RL 8.]   On May 24, 2007, the court of

20   appeal denied the petition without opinion. [RL 9.]

21          On July 15, 2007, Petitioner filed a petition for writ of habeas corpus in the

22   California Supreme Court  (Case No. S154457). [RL 10.]  The state supreme court denied

23   that petition without opinion or citation to authority on January 3, 2008. [RL 11.]

24          Petitioner filed his Petition for Writ of Habeas Corpus ("Pet.") in this case on

25   January 12, 2008.  On February 11, 2008, Respondent filed a Return.  On April 9, 2008,

26   Respondent filed an Answer to Petition for Habeas Corpus and Memorandum of Points

27   and Authorities in Support  ("P&A"), and lodged the record in connection with

28   Petitioner's case.  On June 4, 2008, Petitioner filed his Traverse.

On November 20, 2008, the court issued a Report and Recommendation recommending denial of the Petition.  Petitioner filed Objections ("Obj.") on December 16, 2008.

This  Final Report and Recommendation now issues.

## II.  FACTUAL BACKGROUND[1]

### A.    MOTION FOR SUBSTITUTION OF COUNSEL:

The facts of Petitioner's Marsden[2] and Faretta[3] hearings, as reflected by the Reporter's Transcripts ("RT") dated February 4, 2005, are as follows:

After the Honorable Judge John Tomberlin cleared the courtroom, leaving only the court reporter, two bailiffs, the clerk, Judge Tomberlin, Raymond Hallard (deputy  public defender), and Petitioner, the judge asked Petitioner to explain why he believed he should not be represented by Mr. Hallard.  [Pet., Ex. C at 8.]  Petitioner explained that Mr. Hallard did not talk to him prior to his preliminary hearing.  In addition, when Petitioner appeared at the hearing, the prosecutor had witnesses in the courtroom and was pointing at Petitioner while speaking with those witnesses. [Pet., Ex. C at 8-9.] During the preliminary hearing, those witnesses identified Petitioner in the courtroom and Mr. Hallard did not object. [Id.]

According to Petitioner, Mr. Hallard had been discussing making a deal with

_____

[1]  The facts of the offense, which are not relevant to Petitioner's federal habeas claims, are stated as follows in the Statement of Facts from the opinion of the California Court of Appeal:
Defendant approached the victim and told her that her car was wanted for drug trafficking.  The victim thought defendant was a police officer, so she handed him the car keys so that he could look in her car.  Defendant got in the car and drove away.
[RL 5 at 2.]

[2]  People v. Marsden, 2 Cal.3d 118, 84 Cal. Rptr. 156 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing.

[3]  Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), finds that the Sixth Amendment right to counsel implicitly guarantees a corresponding right to self-representation.

1  Petitioner from the start, and failing to prepare a defense.  Therefore, Petitioner believed
2  that the combination of the improper identification and Mr. Hallard's failure to prepare a
3  defense would deprive him of a fair trial. [Pet., Ex. C at 9.]

4      Judge Tomberlin then asked Petitioner his position with respect to representing
5  himself.  Petitioner responded that he would represent himself if he had to do so.  He
6  further explained his belief that noone had an interest in defending him, as the public
7  defender represents the public, while the district attorney represents the People. [Pet., Ex.
8  C at 9-10.]

9      When asked by Judge Tomberlin,  Mr. Hallard responded that he did not believe
10 that the disagreements between Petitioner and himself rose to the level of being a conflict
11 of interest. [Pet., Ex. C at 12.]

12     Judge Tomberlin denied Petitioner's request for substitute counsel, explaining that
13 although there were differences in the way that Petitioner and Mr. Hallard would handle
14 the case, tactics are the attorney's decision.  Further, Judge Tomberlin found that there
15 was no indication of an irreconcilable breakdown of communication between Petitioner
16 and Mr. Hallard. [Pet., Ex. C at 12.]

17 **B.    MOTION FOR SELF-REPRESENTATION:**

18     The court then proceeded as follows:

19 THE COURT:        Now, I am going to ask you, based on the fact that I am not ordering
20                   Mr. Hallard removed, is it your request that I appoint you as a
21                   substitute attorney yourself in pro per?

22 [PETITIONER]:     Yes, sir.

23 THE COURT:        And I am going to tell you that it is my opinion that that is a very
24                   unwise decision.  I am going to say that to you, but I cannot tell you
25                   not to do it, do you understand that?

26 [PETITIONER]:     Yes, sir.

27 [Pet., Ex. C at 13.]

28     The judge then gave Petitioner a pro per form to fill out, and told him that they

1  would discuss it further at 1:30 p.m. that day.

2      During the afternoon hearing, the prosecutor informed the court that, after a delay,

3  she had finally received Petitioner's record of prior convictions and discovered that he had

4  three prior strike convictions. [Pet., Ex. D at 15.] While Petitioner was then charged with

5  only one strike, the prosecutor intended to amend the Information to allege the prior

6  strikes.  The prosecutor then stated that she would accept a plea to one strike, but if he

7  would not do that, she would amend to allege the prior strikes, subjecting him to a

8  potential sentence of twenty-five years to life in state prison if he were convicted.  [Pet.,

9  Ex. D at 17.]

10      Judge Tomberlin explained to Petitioner:

11 THE COURT:      Mr. Givens, this is not an enviable position for you to be sitting in right

12                 now.  I have no idea what the truth is.  I have no idea of anything else

13                 but Ms. Michaels has received something else now that she didn't have

14                 previously.  That's what she is saying.

15                     She is saying that she believes that you don't have just this one

16                 prior conviction for robbery.  It's alleged that you have one–she's

17                 saying that she's found evidence of additional robbery convictions.

18                 [ ... ]

19 THE COURT:      Let me tell you this, Mr. Givens, if she shows that you were convicted

20                 of two different counts of robbery, whether they were in 1980, 1986, or

21                 1992, if she shows you were convicted of two counts of robbery, and

22                 she shows that you're guilty of this currently charged unlawful driving

23                 or taking of a vehicle, you will be sentenced to 25-years-to-life in State

24                 Prison.

25                     Do you understand that?

26 [PETITIONER]:    I just heard what you said, sir.

27 THE COURT:      I am not saying that because I wanted to.  I don't like to sentence

28                 people to 25-years-to-life for a taking of a motor vehicle, but I follow

| | | |
|---|---|---|
| 1 | | the law, and I will follow the law in this case. |
| 2 | | [ ... ] |
| 3 | THE COURT: | ... Ms. Michaels is saying she would accept a deal for four years in the |
| 4 | | State Prison, and the alternative is that you might be looking at 25- |
| 5 | | years-to-life in the State Prison if you don't agree to take four years. |
| 6 | | Do you understand that? |
| 7 | | [ ... ] |
| 8 | [PETITIONER]: | Your honor, I am not taking the deal, your Honor. |
| 9 | [Pet., Ex. D 19-22.] | |

Judge Tomberlin then proceeded to question Petitioner further about his decision to represent himself, explaining that Petitioner would not get special treatment as a pro per. He alerted Petitioner of the risks due to his lack of knowledge of the evidence code. The judge continued to explain Petitioner's rights to him, including warnings that he would be up against an experienced trial attorney and that the court could not help him, nor would he receive special library privileges, or extra time to prepare motions for trial. Moreover, Judge Tomberlin explained that if Petitioner changed his mind about wanting to represent himself, the court might deny him the opportunity to change his mind and have a lawyer appointed. [Pet., Ex. D at 24-28.]

The judge then reviewed the charges against Petitioner once again, reiterating, "...I will remind you, I don't want you to represent yourself. I want you to have Mr. Hallard represent you." [Pet., Ex. D at 29.] Judge Tomberlin proceeded:

| | | |
|---|---|---|
| 22 | THE COURT: | ...You understand today you could have a disposition of four years |
| 23 | | total, a determinate sentence, and if she amends the alleged case with |
| 24 | | additional strikes, and you are convicted, then you will do 25-to-life in |
| 25 | | prison is you're convicted, and two strikes proved, do you understand |
| 26 | | that? |
| 27 | [PETITIONER] | Yes, sir. |
| 28 | THE COURT: | Do you know you were charged with a general intent crime or a |

1            specific intent crime?

2  [PETITIONER]:    I haven't got the file yet, sir.

3  THE COURT:       Do you understand that without knowing the answers to that question

4                   you're going to be helplessly lost in attempting to identify and prepare

5                   possible defenses to the charge and to say nothing about making

6                   objections and admissibility of the relevant evidence?

7  [Pet., Ex. D at 30.]

8          Finally, after emphasizing that the potential issues were complicated and technical,

9  possibly requiring pretrial motions to suppress, for dismissal, for severance of counts, and

10 so on, Judge Tomberlin also warned Petitioner that he would not be able to assert

11 ineffective assistance of counsel if convicted. [Pet., Ex. D at 31-32.] In addition, he

12 warned Petitioner that damaging evidence might be admitted against him unless he knew

13 the proper objections to raise, and that the jury might read into questions he asked of

14 witnesses and admissions by Petitioner–a problem that would not occur if Petitioner

15 allowed Mr. Hallard to represent him. [Pet., Ex. D at 33-34.]

16         After the foregoing advisements, the Judge Tomberlin again asked Petitioner

17 whether he wished to give up his right to be represented by a lawyer, and insisted on

18 representing himself.  Petitioner responded, "yes, sir." [Pet., Ex. D at 36.]

19

20                         **III.  PETITIONER'S CLAIMS**

21 Petitioner alleges the following grounds for federal habeas corpus relief:

22 1.      Petitioner's request for self-representation was equivocal; he only requested

23         self-representation due to the improper denial of his motion to substitute

24         counsel.  As a result, Petitioner was denied his Sixth Amendment right to

25         counsel. [Pet., attachment 4-8.]

26 2.      Petitioner's counsel during the afternoon hearing on February 4, 2005,

27         provided ineffective assistance when he failed to "protect" Petitioner during

28         the discussion of the plea offer and the potential amendment of the

1    Information to allege the prior strike convictions. [Pet., attachment 9-10.]

2    3.    Appellate counsel provided ineffective assistance when he failed to assert the

3    denial of counsel resulting from the court's improper grant of Petitioner's

4    request for self-representation, and pre-trial counsel's ineffective assistance

5    during the <u>Marsden</u>/ <u>Faretta</u> proceedings. [Pet., Ex. C at 11.]

6

7    ## IV.  **STANDARD OF REVIEW**

8    Review of the Petition in this case is governed by provisions of the Antiterrorism

9    and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, a federal court

10   may not grant habeas relief on a claim adjudicated on its merits in state court unless that

11   adjudication "resulted in a decision that was contrary to, or involved an unreasonable

12   application of, clearly established Federal law, as determined by the Supreme Court of the

13   United States."  28 U.S.C. § 2254(d)(1).  The term "clearly established Federal law"

14   means "the governing legal principle or principles set forth by the Supreme Court at the

15   time the state court renders its decision."    <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72, 123

16   S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  A state court decision is "contrary to" such

17   established law if the decision applies a rule that contradicts the governing Supreme Court

18   law or reaches a result that differs from a result the Supreme Court reached on "materially

19   indistinguishable" facts.  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146

20   L. Ed. 2d 389 (2000).  A decision involves an "unreasonable application" of federal law if

21   "the state court identifies the correct governing legal principle from [Supreme Court]

22   decisions but unreasonably applies that principle to the facts of the prisoner's case."

23   <u>Williams</u>, 529 U.S. at 413.  A federal habeas court may not overrule a state court decision

24   based on the federal court's independent determination that the state court's application of

25   governing law was incorrect, erroneous or even "clear error."  <u>Lockyer</u>, 538 U.S. at 75.

26   Rather, a decision may be rejected only if the state court's application of Supreme Court

27   law was "objectively unreasonable."  <u>Id.</u>

28   \\\

# V. DISCUSSION

## A.   CLAIM ONE: SIXTH AMENDMENT VIOLATION

Petitioner asserts that he was forced to request self-representation when the court denied his motion for substitution of counsel, and as a result, he was denied his Sixth Amendment right to counsel. [See Pet., attachment 6-8; Trav. 7.]

### 1.   Request for Substitution of Counsel:

Petitioner's first claim is founded on an underlying assertion that the court was wrong in denying Petitioner's Marsden motion.  Petitioner stated the following grounds for his Marsden motion: (1) his appointed attorney failed to object to alleged prosecutorial misconduct immediately prior to, and during, his preliminary hearing, thus permitting an unduly suggestive in-court identification, and; (2) his relationship with counsel had broken down due to their disagreement over tactics and whether Petitioner should consider the prosecution's plea offer.

In a federal habeas proceeding, the ultimate question on a claim concerning substitution of counsel is whether the trial court's denial of a petitioner's Marsden motion "actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  See Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000). The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his attorney.  See Morris v. Slappy, 461 U.S. 1, 14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983); Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008)(en banc).  To compel a criminal defendant to undergo a trial assisted by an attorney with whom he has become embroiled in an "irreconcilable conflict," however, is, in essence, to deprive the defendant of any counsel whatsoever.   See United States v. Moore, 159 F.3d 1154, 1159-60 (9th Cir. 1998) (finding testimony by defendant and counsel evidenced irreconcilable conflict amounting to breakdown of attorney-client relationship).

1    When a defendant voices a seemingly substantial complaint about his counsel, a

2    trial judge should make a thorough inquiry into the reasons for the defendant's

3    dissatisfaction.  Bland v. Cal. Dep't. of Corrs., 20 F.3d 1469, 1476 (9th Cir. 1994),

4    overruled on other grounds by Schell, 218 F.3d 1017.  The inquiry, however, "need only

5    be as comprehensive as the circumstances reasonably would permit."  King v. Rowland,

6    977 F.2d 1354, 1357 (9th Cir. 1992) (internal quotation and citation omitted) (noting

7    record may demonstrate extensive inquiry was not necessary).  The proper focus of a trial

8    court's inquiry into a motion to substitute counsel "is on the nature and extent of the

9    conflict between defendant and counsel, not on whether counsel is legally competent."

10   United States v. Walker, 915 F.2d 480, 483 (9th Cir. 1990), overruled on other grounds by

11   United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000) (emphasis in original).  The

12   relevant inquiry is whether a dispute exists between attorney and client that rises "to the

13   level of an irreconcilable conflict resulting in a total lack of communication and depriving

14   [the defendant] of effective assistance of counsel."  See Bland, 20 F.3d at 1477.

15   The record here reflects that Judge Tomberlin held a hearing in which he considered

16   Petitioner's reasons for his motion to substitute counsel and Deputy Public Defender

17   Hallard's  response to Petitioner's complaints.  While Judge Tomberlin acknowledged

18   Petitioner's position, he properly ruled on the basis of whether there was an irreconcilable

19   breakdown of communication between Petitioner and his attorney.  See Walker, 915 F.2d

20   at 483.  As such, the record plainly indicates that the trial court applied clearly established

21   Supreme Court law in deciding the motion, and the record does not support a finding that

22   the court unreasonably applied that law based on the facts.  See Larson v. Palmateer, 515

23   F.3d 1057, 1067 (9th Cir. 2008)("no Supreme Court case has held that 'the Sixth

24   Amendment is violated when a defendant is represented by a lawyer free of actual

25   conflicts of interest, but with whom the defendant refuses to cooperate because of dislike

26   or distrust.'")(citing Plumlee, 512 F.3d at 1211).  Accordingly, the underlying basis for

27   Petitioner's first claim – that his substitution of counsel motion was wrongly denied–is not

28   supported by the record or the relevant legal authorities.

1      **2.**    <u>**Request for Self-Representation**</u>**:**

2      Petitioner further asserts that judicial error from his <u>Marsden</u> hearing tainted his

3 waiver of his right to counsel under <u>Faretta v. California</u>, 422 U.S. 806, 95 S. Ct. 2525, 45

4 L. Ed. 2d 562 (1975).  In particular, Petitioner claims his waiver was not voluntary,

5 because his decision was made only because he was forced to represent himself due to the

6 trial court's improper denial of his <u>Marsden</u> motion.  Petitioner's argument is not

7 persuasive.

8      A criminal defendant has the right to waive the assistance of counsel and represent

9 himself, provided that the waiver is timely, knowing, intelligent, voluntary, and

10 unequivocal.  <u>Faretta v. California</u>, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562

11 (1975).  <u>See also</u> <u>Godinez v. Moran</u>, 509 U.S. 389, 397-400, 113 S. Ct. 2680, 125 L. Ed.

12 2d 321 (1993).  Before allowing a defendant to represent himself, the trial court must

13 make sure that he is "made aware of the dangers and disadvantages of self-representation,

14 so that the record will establish that 'he knows what he is doing and his choice is made

15 with eyes open.' " <u>Snook v. Wood</u>, 89 F.3d 605, 613 (9th Cir. 1996) (<u>quoting</u> <u>Faretta</u>, 422

16 U.S. at 835).  While a trial judge may doubt the quality of representation that a defendant

17 may provide for himself, the defendant must be allowed to exercise his right to self-

18 representation so long as he knowingly and intelligently waives his right to counsel and is

19 able and willing to abide by rules of procedure and courtroom protocol.   <u>See</u> <u>McKaskle v.</u>

20 <u>Wiggins</u>, 465 U.S. 168, 173, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

21      "Although <u>Faretta</u> announced a constitutional right to self-representation, it

22 mandated no specific litany to ensure that waivers of counsel are knowing and intelligent."

23 <u>Lopez v. Thompson</u>, 202 F.3d 1110, 1119 (9th Cir. 2000) (<u>en</u> <u>banc</u>).  <u>See also</u> <u>Spence v.</u>

24 <u>Runnels</u>, 2006 WL 224442, *10 (E. D. Cal. 2006) ("Although the Supreme Court has

25 alluded to the advisements that should precede a court's granting a <u>Faretta</u> motion, it has

26 not prescribed a formula to be followed.").  <u>See generally</u> <u>Iowa v. Tovar</u>, 541 U.S. 77, 92,

27 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004).  In determining whether a waiver was knowing

28 and intelligent, a reviewing court does not look to see whether specific warnings or

1  advisements were given, but rather examines whether the record as a whole demonstrates

2  that the petitioner was informed of the nature of the charges against him, the possible

3  penalties, and the disadvantages of self-representation. See United States v. Lopez-Osuna,

4  242 F.3d 1191, 1199-1200 (9th Cir. 2001); United States v. Robinson, 913 F.2d 712, 715

5  (9th Cir. 1990).  The issue is "not ... the quality of his representation, but rather ... the

6  quality of his decision."  Bribiesca v. Galaza, 215 F.3d 1015, 1020 (9th Cir. 2000).

7          In this case, after denying Petitioner's motion for substitute counsel, Judge

8  Tomberlin delayed consideration of Petitioner's motion for self-representation until the

9  afternoon.  This brief delay allowed Petitioner, and the court, to consider separately

10  whether Petitioner truly desired to represent himself.  Moreover, before recessing the

11  morning hearing, Judge Tomberlin informed Petitioner that, although he could not tell

12  Petitioner not to do it, he believed his decision to self-represent was unwise.

13          The record of Petitioner's afternoon  Faretta  hearing demonstrates that the court

14  informed Petitioner of the risks of self-representation, and in Petitioner's case in

15  particular, of the high stakes decision he was making due to the prosecution's intention to

16  amend the Information to assert prior strike convictions.  Petitioner expressed his

17  understanding of the plea offer and the risk that he would face a life sentence, nevertheless

18  rejecting both the plea offer and the opinion of the court regarding the decision to

19  represent himself.

20          Judge Tomberlin diligently and thoroughly proceeded to give Petitioner numerous

21  examples of difficulties and risks  Petitioner was likely to face if he represented himself,

22  stating clearly that the judge himself did not think it was a good choice and wished

23  Petitioner would not represent himself.  Based on Petitioner's responses to the judge's

24  warnings and questions, there is no support for the assertion that Petitioner's choice was

25  anything other than knowing and intelligent.  See Snook, 89 F.3d at 613 (a waiver of

26  counsel is "knowing and intelligent" where a defendant is made aware of the dangers and

27  disadvantages of self-representation so that his choice is made with his eyes

28  open)(citing Faretta, 422 U.S. at 835).

12

1    Petitioner's contention that the court improperly threatened him by reviewing in
2    detail Petitioner's options with respect to entering a plea resulting in a four-year
3    determinate sentence as opposed to risking a trial that could result in an indeterminate life
4    term with a minimum of twenty-five years in state prison, is without merit.  On the
5    contrary, the court  provided information to Petitioner in an effort to assist him in making
6    an informed choice regarding self-representation.  Had the court <u>not</u> discussed the
7    prospect of a life sentence based on the prosecutor's intention to amend, that omission
8    would have deprived Petitioner of the ability to make a knowing, intelligent and voluntary
9    decision to self represent.[4]

10   Despite the judge's advisements to the contrary, Petitioner chose to represent
11   himself and promised to abide by courtroom protocols and rules. As discussed above, the
12   record establishes that Judge Tomberlin recessed proceedings in order to fully consider
13   Petitioner's <u>Faretta</u> request separately from the motion for substitution of counsel.  Based
14   on all of the foregoing, there is no merit to the contention that the circumstances of
15   Petitioner's choice to represent himself (<u>i.e.</u> the fact that Petitioner only chose to self-
16   represent because his substitution motion was denied), renders his choice involuntary. <u>See</u>
17   <u>United States v. Hernandez</u>, 203 F.3d 614, 621-22 (9th Cir. 2000)(finding that the fact that
18   a defendant chose to represent himself only because the judge was unwilling to grant his
19   request for new counsel did not provide evidence that the request to self-represent was
20   equivocal); <u>Adams v. Carroll</u>, 875 F.2d 1441, 1442 (9th Cir. 1989).  As a result, the state
21   supreme court's denial of this claim was not contrary to, or an unreasonable application
22   of, clearly established Supreme Court law. <u>See</u> 28 U.S.C. § 2254(d).  Therefore,

23
24
25
26   [4]  The court's refusal to hear Petitioner's complaints of prosecutorial misconduct
     during the <u>Faretta</u> hearing do not support his contentions either.  The court devoted the
     afternoon hearing to determining whether Petitioner's request to self-represent was
27   voluntary and intelligently made.  Any motions regarding alleged prosecutorial
     misconduct were not appropriate until issues regarding Petitioner's representation were
28   decided.

1    Petitioner's first claim should be denied.[5]

2    **B.    CLAIM TWO: INEFFECTIVE ASSISTANCE OF COUNSEL**[6]

3            Petitioner next asserts that Deputy Public Defender Hallard provided ineffective

4    assistance by failing to "protect" him during the court's discussion of the prosecution's

5    intention to amend the Information to allege prior "strike" convictions.  As discussed

6    below, this claim is without merit.

7            **1.    <u>Legal Standard</u>:**

8            To establish a claim of ineffective assistance of counsel, so as to warrant setting

9    aside a criminal conviction or sentence,  a habeas petitioner must show both that counsel's

10   representation fell below an objective standard of reasonableness, and that counsel's

11   deficient performance actually prejudiced the defense.  <u>Strickland v. Washington</u>, 466

12   U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  "Without proof of both

13   deficient performance and prejudice to the defense ... it could not be said that the sentence

14   or conviction 'resulted from a breakdown in the adversary process that rendered the result

15   of the proceeding unreliable,' ... and the sentence or conviction should stand."  <u>Bell v.</u>

16   <u>Cone</u>, 535 U.S. at 695, quoting <u>Strickland</u>, 466 U.S. at 687.  Consequently, a claim of

17   ineffective assistance must be rejected upon a finding either that counsel's performance

18   was reasonable or that the alleged error was not prejudicial.  <u>Strickland</u>, 466 U.S. at 697.

19          To demonstrate deficient performance, petitioner bears the burden of showing that

20   his counsel's representation fell below an objective standard of reasonableness under

21   prevailing professional norms.  <u>Id.</u>  A court must indulge a strong presumption that

22   _____

23          [5]  The court overrules Petitioner's objection to the denial of his <u>Faretta</u> claim on the
     ground that the court misconstrued his claim as containing a challenge to the trial court's
24   denial of his motion for substitute counsel. [Obj. 1-2.] Assuming, <u>arguendo</u>, that
     Petitioner did not intend to challenge the denial of his <u>Marsden</u> motion, the analysis of his
25   <u>Faretta</u> claim is unchanged.  As discussed above, the record reflects that Petitioner's
     request was unequivocal, and the fact that he only requested self-representation because
26   the court denied his substitution of counsel motion does not alter that conclusion.
     <u>See</u> <u>Hernandez</u>, <u>supra</u>, 203 F.3d at 621-22.

27          [6]  Petitioner's objection to the court's denial of his ineffective assistance of counsel
     claim is overruled. [Obj. 3-4.]  Petitioner raises nothing that would alter the court's
28   analysis or conclusion.

counsel's conduct falls within the wide range of reasonable professional assistance.  Id. at 689; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  The relevant inquiry is not whether another lawyer, with the benefit of hindsight, would have acted differently or whether defense counsel could have done differently, but rather, whether the choices made by defense counsel were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th  Cir. 1998).  In the context of guilty pleas, the Strickland test requires that a petitioner show that the advice he received from counsel was not within the range of competence of attorneys in criminal cases.   McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

Petitioner must also "affirmatively prove prejudice." Strickland, 466 U.S. at 693.   It is not enough to show that counsel's errors had some conceivable effect on the outcome of the proceeding" because "virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693.  Rather, petitioner has the heavier burden of showing a "reasonable probability," sufficient to undermine confidence in the outcome, that, "but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

### 2.   **Analysis:**

In this case, Petitioner can demonstrate neither deficient performance nor prejudice. The record establishes that the deputy public defender acted within the reasonable range of competent performance in advising Petitioner to enter a plea to avoid a potential life sentence.

During Petitioner's Marsden hearing, he complained that Mr. Hallard had urged him to consider entering a plea bargain.  Petitioner rejected counsel's urging and sought to replace him, in part because of that advice.  At the afternoon Faretta hearing, Mr. Hallard notified Judge Tomberlin that he had informed Petitioner, prior to the lunch recess,  about the prosecution's intent to amend to allege prior "strike" convictions. [See Pet., Ex. D at 16.]  In addition, Mr. Hallard confirmed to the court that he had explained to Petitioner

that the amendment could mean that Petitioner could be sentenced to twenty-five-years-to-life in state prison if convicted. [Id.] When Petitioner expressed some confusion in this regard ("Sir, at this present time, I don't know what the attorney and her are even talking about as far as me having--"(Pet., Ex. D at 17)), the court explained in detail the meaning of an amendment to allege prior "strike" convictions, and Petitioner still refused the deal. [See Pet., Ex. D at 22.]

Under circumstances which included the fact that counsel's advisement regarding entering a plea bargain was one of the grounds Petitioner cited to the court for substitution of counsel, and the further fact that Petitioner had stated that he would rather represent himself than be represented by appointed counsel, it appears that, despite Petitioner's refusal to cooperate, Mr. Hallard made every effort to provide Petitioner with advice within the range of competence of attorneys in criminal cases.  See  McMann, 397 U.S. at 771.  The tragic result of Petitioner's refusal to consider a plea bargain cannot be attributed to deficient performance by Mr. Hallard.  Petitioner has not alleged, nor is the court aware of, any legal authority for the proposition that competent counsel is required to do anything further to persuade a client to consider his or her advice.  Nor is there any indication that Mr. Hallard could have done anything to prevent the prosecution from amending the Information.

Based on the foregoing, the California Supreme Court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.  28 U.S.C. § 2254(d).  Therefore, federal habeas relief should be denied.

\\\

\\\

\\\

**C.     CLAIM THREE: INEFFECTIVE ASSISTANCE OF APPELLATE**

16

1    **COUNSEL**[7]

2        In his final claim, Petitioner contends that appellate counsel provided ineffective

3    assistance by failing to assert the two previous claims on direct review.

4        The proper standard for evaluating a claim that appellate counsel was ineffective in

5    neglecting to raise claims on appeal is that enunciated in <u>Strickland</u>, accordingly, a

6    petitioner "must first show that his counsel was objectively unreasonable . . . in failing to

7    find arguable issues for appeal," and then show prejudice resulting from that failure.

8    <u>Smith v. Robbins</u>, 528 U.S. 259, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).

9        Appellate counsel was entitled to make a tactical choice to raise certain claims and

10   not others on direct review.  <u>Smith v. Murray</u>, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L.

11   Ed. 2d 434 (1986)(the process of "winnowing out  weaker arguments on appeal and

12   focusing on 'those more likely to prevail, far from being evidence of incompetence, is the

13   hallmark of effective appellate advocacy'")(<u>citing</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52,

14   103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)).  As to Petitioner's first claim, had appellate

15   counsel asserted a denial of counsel in violation of the Sixth Amendment on direct review,

16   the state courts would have denied that claim because  California applies the

17   <u>Faretta</u> standard in analysis of waiver of counsel claims.  <u>See</u> <u>Benge v. Superior Court</u>,

18   110 Cal. App. 3d 121, 126-130, 167 Cal. Rptr. 714 (1980).[8]  Because the claim would

19   have been denied by the state courts, appellate counsel's performance cannot be found

20   incompetent or prejudicial for failing to assert that claim.

21       The same is true with respect to Petitioner's ineffective assistance of counsel claim.

22   Because California applies the <u>Strickland</u> standard (<u>see</u> <u>People v. Williams</u>, 16 Cal. 4th

23   153, 215, 66 Cal. Rptr. 2d 123 (1997)), Petitioner's claim, if asserted, would have been

24

25       [7]  Petitioner's objection to the denial of this claim restates the same assertions
26   contained in his Petition. [Obj. 4-5; <u>see</u> Pet. 11.] The court's analysis and conclusion
     remain the same.  Therefore, Petitioner's objection is overruled.

27       [8]  Indeed, <u>Faretta</u> itself, which established the standard for a knowing, intelligent
28   and voluntary waiver of the right to counsel, was a case on direct review from the
     California Supreme Court.

1   denied on direct review.  Thus, appellate counsel's failure to assert that claim on appeal

2   did not constitute deficient performance, nor was it prejudicial.  Thus, the state courts'

3   rejection of Petitioner's ineffective assistance of appellate counsel claim was not contrary

4   to, or an unreasonable application of, clearly established Supreme Court law.  28 U.S.C.

5   § 2254(d).   Accordingly, the Petition should be denied on the merits.  28 U.S.C.

6   § 2254(b)(2).

7

8                              **VI.  <u>RECOMMENDATION</u>**

9          For the reasons discussed above, it is recommended that the court issue an Order:

10  (1) approving and accepting this Final Report and Recommendation; and (2) denying the

11  Petition and dismissing this action with prejudice.

12  DATED: January 27, 2009

13

14                              / s /
                          _____

15                              STEPHEN J. HILLMAN
                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28